**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROBIN FORSLUND, TIMOTHY KELLY, GEORGE LENZ JR., MATTHEW MENTING, DONALYN NORTH, ROBIN RECTOR, ERIC OTTENHEIMER, GAIL ROSSI, and GREGORY WILLIAMS, <br><br> *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> R. R. DONNELLEY & SONS COMPANY, <br><br> Defendant. | Case No. 1:22-cv-04260 <br><br> JUDGE JOHN J. THARP, JR <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

I. INTRODUCTION ...................................................................................................... 1

II. CASE SUMMARY ..................................................................................................... 2

    A. The Data Incident ................................................................................................ 2

    B. Procedural Background ........................................................................................ 4

    C. History of Negotiations ....................................................................................... 5

III. SUMMARY OF THE SETTLEMENT ....................................................................... 6

    A. The Settlement Class ........................................................................................... 6

    B. The Settlement Benefits ...................................................................................... 6

        1. Monetary Relief ............................................................................................ 6

            a. Reimbursement for Ordinary Losses & Attested Time ......................... 7

            b. Reimbursement for Extraordinary Out-of-Pocket Losses .................... 8

            c. California Statutory Payment ................................................................. 8

            d. Alternative Cash Payment ..................................................................... 9

        2. Equitable Relief ............................................................................................ 9

    C. Notice and Claims Process .................................................................................. 9

        1. Notice ............................................................................................................ 9

        2. Claims, Objections, and Requests for Exclusion ........................................ 11

    D. Attorneys' Fees, Costs, and Service Awards ..................................................... 12

IV. ARGUMENT ............................................................................................................. 13

    A. The Settlement Class and California Subclass Should be Certified for Settlement Purposes ............................................................................................................. 13

        1. The Settlement Class Members and California Settlement Subclass Members are so numerous that joinder is impracticable ........................................... 15

2. Questions of Law and Fact are Common to the Members of the
   Settlement Class and Settlement Subclass .................................................. 15

3. Plaintiffs' Claims are Typical of the Claims of the Members of the
   Settlement Class They Represent ................................................................ 16

4. The Adequacy Requirement is Satisfied ..................................................... 17

5. Rule 23(b) is Satisfied ................................................................................ 18

   a. Common Questions of Fact and Law Predominate ............................... 18

   b. A Class Action is the Superior Method for Resolving These Claims ................. 19

B. The Settlement Should be Approved as Fair, Reasonable, and Adequate ....................... 20

   1. The Settlement Class Representatives and Settlement Class Counsel
      Have Adequately Represented the Settlement Class ..................................... 22

   2. The Settlement Was Negotiated at Arm's-Length by Vigorous Advocates,
      and There Has been no Fraud or Collusion ................................................. 24

   3. The Settlement Provides Substantial Relief for the Settlement Class ..................... 24

      a. The Costs, Risks, and Delay of Trial and Appeal Favor Approval
         of the Settlement ............................................................................ 25

      b. The Method of Providing Relief is Effective ........................................ 26

      c. The Proposed Award of Attorneys' Fees is Fair and Reasonable ....................... 26

      d. There are no Additional Agreements Required to be Identified
         under Rule 23(e)(3) ......................................................................... 27

   4. The Settlement Agreement Treats Settlement Class Members Equitably
      with Each Other ...................................................................................... 27

C. The Parties' Notice Plan Satisfies the Requirements of Rule 23 and
   Due Process Requirements ................................................................................ 28

V. CONCLUSION .............................................................................................................. 30

## TABLE OF AUTHORITIES

**CASES**                                                                                                   **PAGE(S)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302 (N.D. Ill. July 26, 2011) .............................. 14

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................... 14, 18, 19

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) (citations and quotations omitted),
  *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ........ 20, 22, 23

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792 (7th Cir. 2018) .................................................................................................. 27

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
  No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) ............................... 23

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016) ............................................................................................. 25

*Grady v. de Ville Motor Hotel, Inc.*,
  415 F.2d 449 (10th Cir. 1969) ................................................................................................ 25

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ......................................................................... 25

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................................ 25

*Hapka v. CareCentrix, Inc.*,
  No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) .................................. 19

*Herrera v. Wells Fargo Bank, N.A.*,
  No. SACV 18-332JVS, 2021 WL 3932257 (C.D. Cal. Jun. 8, 2021) ....................................... 15

*Hinman v. M and M Rental Center*,
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ..................................................................................... 17

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................................ 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ......................................................................................... 21, 24

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) .................................................................................... 23, 27

iv

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
  No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019) ................................................. 15

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013) ......................................................................... 25

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ......................................................... 15, 19

*In re Northfield Labs., Inc. Sec. Litig.*,
  No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012)
  (citing *In re AT&T*, 270 F.R.D. at 346) ........................................................ 21, 22

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
  No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ................................. 22

*In re Target*,
  309 F.R.D. 482 (D. Minn. 2015) ...................................................................... 15

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .............. 19

*In re TikTok, Inc. Consumer Privacy Litig.*,
  MDL No. 3948, 2021 WL 4478403 (N.D. Ill. Sept. 30, 2021) ............................. 13

*In re TikTok, Inc., Consumer Privacy Litigation*,
  2021 WL 4478403 (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)) ..... 17

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ......................................................................... 20

*Karpilovksy v. All Web Leads, Inc.*,
  17-cv-01307, ECF No. 173 (N.D. Ill. Aug. 8, 2019) .......................................... 27

*Karpilovsky v. All Web Leads, Inc.*,
  No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) ............................... 23

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ......................................................................... 17

*Kolinek v. Walgreen Co.*,
  311 F.R.D. at 501 (N.D. Ill. 2015) .................................................................. 26

*Kusinski v. Macneil Auto. Prod. Ltd.*,
  No. 17-CV-3618, 2018 WL 3814303 (N.D. Ill. Aug. 9, 2018) ............................. 27

*Martin v. JTH Tax, Inc.*,
  No. 13-cv-6923, ECF No. 85 (N.D. Ill. Sept. 16, 2015) ...................................... 27

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ............................................................................................... 28

*Oshana v. Coca-Cola Co.*,
472 F.3d 506 (7th Cir. 2006) ................................................................................ 17

*Parker v. Risk Mgmt. Alternatives, Inc.*,
206 F.R.D. 211 (N.D. Ill. 2002) ........................................................................... 16

*Retired Chi. Police Ass'n v. City of Chi.*,
7 F.3d 584 (7th Cir. 1993) .................................................................................... 17

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ................................................................................ 13

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) (quoting *Catholic Healthcare W. v. U.S. Foodservice Inc.*,
729 F.3d 108, 118 (2d Cir.2013)) (internal quotation marks omitted) ................... 18

*Savanna Group, Inc. v. Trynex, Inc.*,
2013 WL 66181 (N.D. Ill. 2013) .......................................................................... 15

*Spates v. Roadrunner Transportation Sys., Inc.*,
2016 WL 7426134 (N.D. Ill. 2016) ...................................................................... 16

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) (internal quotes and citations omitted) ................... 24

*Taubenfeld v. Aon Corp.*,
415 F.3d 597 (7th Cir. 2005) ................................................................................ 27

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .......................................................................................... 15

*Wright v. Nationstar Mortg., LLC*,
2016 WL 4505169 (N.D. Ill. 2016) ...................................................................... 26

## STATUTE(S)

Cal. Civ. Code § 1798.150(a) ...................................................................................... 9

## OTHER AUTHORITIES

4 *Newberg on Class Actions* § 11.41 (4th ed. 2002)................................................... 20

4 *Newberg on Class Actions*, § 11:50 (4th ed. 2002)................................................. 24

Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C at 17-18.23 (Aug. 2018) ..................... 29

Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C at 19 (Aug. 2018) .............................. 29

*Manual For Complex Litigation*, § 21.633-34 ............................................................. 22

## **RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 25

Fed. R. Civ. P. 23 ......................................................................................... passim

Fed. R. Civ. P. 23(a) ..................................................................... 14, 15, 16, 18

Fed. R. Civ. P. 23(a)(1) ........................................................................................ 15

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 17

Fed R. Civ. P. 23(b)(3) ................................................................. 14, 18, 20, 28

Fed. R. Civ. P. 23(c)(2)(B) .......................................................... 28, 29, 30

Fed. R. Civ. P. 23(c)(2)(C)(iii) ...................................................................... 26

Fed. R. Civ. P. 23(c)(3) ................................................................................ 30

Fed. R. Civ. P. 23(e) ........................................................................ 13, 21

Fed. R. Civ. P. 23(e)(1) ................................................................................ 28

Fed. R. Civ. P. 23(e)(1)(B) ................................................................ 21, 22

Fed. R. Civ. P. 23(e)(1)(B)(ii) ...................................................................... 14

Fed. R. Civ. P. 23(e)(2) ...................................................................... 21, 22, 26

Fed. R. Civ. P. 23(e)(2)(C)(ii) ...................................................................... 26

Fed. R. Civ. P. 56 ................................................................................ 25

Plaintiffs Robin Forslund, Timothy Kelly, George Lenz Jr., Matthew Menting, Donalyn North, Robin Rector, Eric Ottenheimer, Gail Rossi, and Gregory Williams ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, respectfully submit this memorandum of law in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). The terms of the class action settlement (the "Settlement") are set forth in the Settlement Agreement dated July 26, 2023 (the "Settlement Agreement" or "SA").[1]

## I.  **INTRODUCTION**

This settlement resolves a putative nationwide class action brought by Plaintiffs, on behalf of themselves and a purported class of similarly situated individuals, alleging Defendant R.R. Donnelley & Sons Company ("Defendant") failed to adequately protect their personal and private information in a Data Incident that took place on or around November 29, 2021. Throughout the pendency of the litigation, Defendant has denied all allegations of wrongdoing and liability, and asserted defenses to all claims.

Recognizing the risks of protracted litigation, the Parties agreed to pursue informal discovery and settlement negotiations. After Defendant produced informal discovery regarding the putative class size and mechanism of the Data Incident, the Parties engaged in arms-length negotiations over the course of three months. The extended negotiations resulted in the proposed settlement that the Parties currently request the Court to preliminarily approve. The Settlement Agreement is an excellent result for the putative class and includes a non-reversionary common fund in the amount of $979,704.00 to be distributed to settlement class members.

---

[1] Capitalized terms not otherwise defined herein have the meaning set forth in the Settlement Agreement, attached hereto as Exhibit A.

1

Pursuant to the Parties' agreement, Plaintiffs now respectfully request that this Court: (1) preliminary approve the Settlement Agreement as fair, adequate, and reasonable, and within the reasonable range of possible final approval; (2) appoint Plaintiffs Robin Forslund, Timothy Kelly, George Lenz Jr., Matthew Menting, Donalyn North, Robin Rector, Eric Ottenheimer, Gail Rossi, and Gregory Williams as Class Representatives; (3) appoint Plaintiffs' Counsel Raina C. Borrelli of Turke & Straus, LLP, Joseph M. Lyon of The Lyon Firm, LLC, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel; (4) provisionally certify the Settlement Class (as defined below) under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, and confirm that it is appropriate notice and that is satisfies due process and Rule 23; (6) set a date for a final approval hearing; and (7) set deadlines for members of the Settlement Class to submit claims for compensation, and to object to or exclude themselves from the settlement.

## II. CASE SUMMARY

### A. The Data Incident

Defendant is an integrated multichannel marketing communications service company that has been in business for 150 years. Consolidated Complaint, ECF No. 24, ¶ 26 ("Compl."). As part of its regular business, Defendant collects a wide range of personal identifying information ("PII" or "Private Information"), including names and Social Security numbers. *Id.*, ¶ 27. In collecting and maintaining PII, Defendant acknowledges its duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII. *Id.*, ¶ 31. Specifically, its Privacy Policy states as follows:

> The security of your personal data is important to us. We follow generally accepted industry standards to protect the personal data submitted to us, both during transmission and once we receive it.
>
> RRD uses reasonable measures to safeguard personally identifiable data, which measures are appropriate to the type of data maintained and follows applicable laws

> regarding safeguarding any such data under our control. In addition, in some areas of our Sites, RRD may use encryption technology to enhance data privacy and help prevent loss, misuse, or alteration of the data under RRD's control. RRD also employs industry-standard measures and processes for detecting and responding to inappropriate attempts to breach our systems.

*Id.*, ¶ 32.

On or about August 5, 2022, Defendant began sending notices to victims of the Data Incident ("Notice of the Data Incident") and, concurrently, notified various state Attorneys General of the Data Incident. *Id.*, ¶ 34. In an August 5, 2022 letter to the Washington Attorney General, Defendant stated:

> On December 23, 2021, RRD identified a systems intrusion in its technical environment. The Company promptly implemented a series of containment measures to address this situation, including activating its incident response protocols, shutting down its servers and systems and commencing a forensic investigation. Based on observed tactics, RRD identified the Threat Actor as being affiliated with a foreign ransomware group. RRD also determined that the Threat Actor gained access through a phishing attack that targeted several employees on or about November 29, 2021. RRD notified and is working with appropriate law enforcement authorities. Following this incident, RRD has also enriched its monitoring and analysis capabilities to combat future cyber threats.

> RRD initially did not believe that the Threat Actor had removed any data from its environment. However, in mid-January 2022, RRD became aware that certain of its corporate data was accessed and exfiltrated by the Threat Actor. It evaluated the affected data with the assistance of a third-party data discovery provider and ultimately identified certain employee personal data among the documents exfiltrated. RRD also determined that the exfiltrated documents included certain data related to clients for whom RRD provides printing and mailing services. It has notified the affected clients accordingly. It expended significant effort to review each of the documents in order to identify potentially affected clients and individuals…. Affected documents included names, addresses, social security numbers, and, in some cases, dates of birth, and/or driver's license numbers.

*Id.* Upon investigation, it was discovered that Conti, "a well-known ransomware group that has attacked more than 400 organizations worldwide" had "claimed responsibility and began leaking 2.5 GB of data allegedly stolen from RRD." *See id.*, ¶¶ 1, 37. The Data Incident is believed to have impacted 81,642 individuals. SA, § I.

After Defendant issued the Notice of the Data Incident, three separate putative class action lawsuits were filed alleging Defendant failed to employ proper safeguards to prevent the ransomware attack in the Northern District of Illinois: *Forslund v. R.R. Donnelley & Sons Co.*, 1:22-cv-04260; *Kelly v. R.R. Donnelley & Sons Co.*, Case No. 1:22-cv-04301; and *Menting v. R.R. Donnelley & Sons Co.*, Case No. 1:22-cv-04838. On September 15, 2022, the three putative class actions were consolidated into the first filed matter, and a Consolidated Amended Complaint was filed on October 14, 2022. *See* Compl..

### B. Procedural Background

This case arises from the alleged compromise of PII as a result of a ransomware cyber-attack Defendant experienced around November 29, 2021. Plaintiffs and Settlement Class Members (as defined below) include current and former employees of Defendant, their dependents, and other individuals affiliated with Defendant whose Private Information was allegedly compromised in the Data Incident. In response to the Data Incident, Defendant sent a Notice of Data Incident to 81,642 current and former employees providing a description of the type of Private Information involved, which may have potentially included, for some individuals, full names and Social Security numbers.

Plaintiffs, collectively, alleged individually and on behalf of a putative nationwide Class that, as a direct result of the Data Incident, Plaintiffs and Class Members suffered numerous injuries and would likely suffer additional harm in the future. Plaintiffs' claims for alleged damages and remedies included the following categories of harms: "(i) invasion of privacy; (ii) out-of-pocket expenses; (iii) loss-of time and productivity incurred mitigating the present risk and imminent threat of identity theft; (iv) actual identity theft and fraud resulting in additional economic and non-economic damages; (v) diminution of value of their PII; (vi) anxiety, stress,

nuisance, and annoyance; (vii) increased targeted and fraudulent robocalls and phishing email attempts; (viii) the present and continuing risk of identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (ix) the retention of the reasonable value of the PII entrusted to Defendant; and (x) the present and continued risk to PII, which remains on Defendant's vulnerable network, placing Plaintiffs and Class Members at an ongoing risk of harm." Compl., ¶ 10.

Plaintiffs, individually and on behalf of other members of the proposed nationwide Class, collectively asserted claims for: (i) negligence, (ii) breach of implied contract, (iii) unjust enrichment, (iv) invasion of privacy, (v) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"), (vi) violation of the New York Labor Law (on behalf of Plaintiff Lenz and the proposed New York subclass), and (vii) declaratory judgment/injunctive relief. *See id.* at ¶¶219-324.

Defendant filed a Motion to Dismiss the Complaint, which is fully briefed. ECF Nos. 32, 33, 43, 45. Before the Court ruled on the Motion to Dismiss, the Parties reached this Settlement.

### C. History of Negotiations

The Parties exchanged extensive informal discovery into a number of areas, including, but not limited to, the putative Class size and residence, number of individuals with SSNs impacted, forensic investigation(s) into the Data Incident, and Defendant's insurance coverage and/or ability to pay. *See* Joint Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Decl.") attached hereto as Exhibit B ¶ 4. Based on this informal discovery exchange, the Parties were able to fully evaluate each side's respective positions on the merits and class certification. *Id*. With this knowledge, the Parties spent approximately three months negotiating the material terms of a class settlement of Plaintiffs'

claims, ultimately reaching agreement on the material terms on May 9, 2023. *Id.* The Parties then worked to memorialize those terms in a full settlement agreement. *Id.* The negotiations were professional and courteous, but each side zealously advocated for their clients' position. *Id.*

### III.  SUMMARY OF THE SETTLEMENT

#### A.  The Settlement Class

The settlement negotiated on behalf of the Class provides for two separate forms of relief: (1) monetary relief; and (2) equitable relief in the form of information security enhancements. SA, § 2. The Settlement provides for a nationwide Settlement Class as well as a California Settlement Subclass.

#### The Settlement Class

All individuals who were sent notice of the Data Incident on or around August 5, 2022.

#### The California Settlement Subclass

All California residents to whom Defendant sent notice of the Data Incident on or around August 5, 2022.

*Id.* §§ 1.4, 1.8. The Settlement Class and California Settlement Subclass specifically exclude: i) all Persons who timely and validly request exclusion from the Settlement Class; (ii) the Judge assigned to evaluate the fairness of this Settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.*

#### B.  The Settlement Benefits

##### 1.  Monetary Relief

The Settlement includes a non-reversionary common fund in the amount of $979,704.00 (the "Settlement Fund") to be distributed to Settlement Class Members.    All Settlement Class

Members shall have the opportunity to submit a Claim Form from the Settlement Fund for certain Claimed Benefits either through the Settlement Website or by hand to a designated Post Office box established by the Settlement Administrator. Any Valid Claims may be subject to pro-rata increase or decrease depending on the aggregated amount of payments of Valid Claims. The Claimed Benefits, as described below, shall include: (a) Reimbursement for Ordinary Out-of-Pocket Losses and Attested Lost Time; (b) Reimbursement for Extraordinary Out-of-Pocket Losses; (c) California Statutory Payments; and (d) Alternative Cash Payments. SA, § 2.

### a.   Reimbursement for Ordinary Losses & Attested Time

All Settlement Class Members who submit a Valid Claim are eligible to receive reimbursement for documented Ordinary Out-of-Pocket Losses and Attested Lost Time, if fairly traceable to the Data Incident, up to $750 per individual ("Ordinary Out-of-Pocket Loss Cap"). SA, § 2. "Ordinary Out-of-Pocket Losses" are unreimbursed costs or expenditures incurred by a Settlement Class Member in responding to notice of the Data Incident. Ordinary Out-of-Pocket Losses may include, without limitation, the following: (1) costs incurred on or after November 29, 2021 associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; (2) other miscellaneous expenses incurred related to any Ordinary Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; (3) credit monitoring or other mitigative costs that were incurred on or after November 29, 2021 through the date of the Settlement Class Member's Claim submission. *Id*, § 2(A). Class Members who elect to submit a Claim for reimbursement of Ordinary Out-of-Pocket Losses must provide to the Settlement Administrator the information required to evaluate the Claim, including: (1) the Settlement Class Member's name and current address; (2) documentation supporting their Claim; (3) a brief description of the documentation describing the nature of the loss, if the nature of the

loss is not apparent from the documentation alone; and (4) a verification, stating that the Claim is true and correct, to the best of the Settlement Class Member's knowledge and belief, and is being made under penalty of perjury. Ordinary Out-of-Pocket Losses will be deemed "fairly traceable" to the Data Incident if the timing of the loss occurred on or after November 29, 2021. *Id*., § 2(A)(iii).

Settlement Class Members may also submit a Claim for up to ten (10) hours of time spent remedying issues related to the Data Incident at $25 per hour by providing an attestation and a brief description of (1) the actions taken in response to the Data Incident; and (2) the time associated with each action ("Attested Lost Time"). Claims for Attested Lost Time are capped at $250.00, and fall under the $750 Ordinary Out-of-Pocket Loss Cap. *Id.*, § 2(A)(iv).

### b. *Reimbursement for Extraordinary Out-of-Pocket Losses*

All Settlement Class Members who submit a Valid Claim are also eligible to receive reimbursement for documented Extraordinary Out-of-Pocket Losses, if fairly traceable to the Data Incident, not to exceed $5,000 per Settlement Class Member. *Id*., §2(B). "Extraordinary Out-of-Pocket Losses" are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident. *Id*. Extraordinary Out-of-Pocket Losses may include, without limitation, the unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of Settlement Class Member's Personal Information. Settlement Class Members may submit multiple Claims, but the total of all amounts claimed may not exceed $5,000. *Id*.

### c. *California Statutory Payment*

Plaintiffs allege violations of California's Consumer Privacy Act, which grants California consumers a private right of action against the unauthorized access and exfiltration, theft, or

disclosure of certain types of personal information, including the right to seek statutory damages. Cal. Civ. Code § 1798.150(a). In recognition of their statutory rights under California's Consumer Privacy Act ("CCPA"), California Settlement Class Members may also make a Claim for a cash payment of up to $350. SA, § 2(C). This payment is in addition to any reimbursement for Ordinary and/or Extraordinary Out-of-Pocket Losses and Attested Lost Time. *Id.*

### d. Alternative Cash Payment

Moreover, Non-California Settlement Class Members may, in lieu of making a claim for reimbursement of Ordinary and/or Extraordinary Out-of-Pocket Losses and Attested Lost Time, elect to receive a cash payment in an amount equal to $200 on a claims-made basis. *Id.*, § 3(D).

### 2. Equitable Relief

For a period of four (4) years following the Effective Date, Defendant agrees to maintain reasonable information security policies ("Business Practice Commitments"). The actual cost for the implementation and maintenance of the Business Practice Commitments will be paid by Defendant separate and apart from the Settlement Fund. Defendant has provided reasonable access to confidential confirmatory discovery regarding the number of Settlement Class Members broken down by category (*e.g.*, current employee, former employee, etc.) and state of residence, the facts and circumstances of the Data Incident and Defendant's response thereto, and the changes and improvements that have been made or are being made to protect Settlement Class Members' PII. *Id.*, § 2.1.

### C. Notice and Claims Process

### 1. Notice

Subject to Court approval, the Parties have agreed to use Kroll Settlement Administration as the Claims Administrator (referred to as the "Settlement Administrator" in the SA). *Id.*, § 1.34.

Settlement Administration Costs will be paid out of the Settlement Fund. *Id.*, § 2.3. Within thirty (30) days after entry of the Preliminary Approval Order ("Notice Commencement Date") and to be substantially completed not later than sixty (60) days after entry of the Preliminary Approval Order, and subject to the requirements of the Settlement Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class via email to the email addresses in Defendants' possession. *Id.*, § 3.3. Where the Short Notice is undeliverable via email or where an email address is not available, the Short Notice will be sent via mail to the address in Defendants' possession. *Id.*, § 3.2 (d). Prior to mailing, addresses will be run through the National Change of Address database. *Id.* Short Notices returned with forwarding addresses will be forwarded, and those returned with no forwarding addresses will be resent to any valid address found after performing a skip trace. *Id.* The Claims Administrator will also cause the CAFA Notice to be provided to the relevant state and federal governmental officials as required by the Class Action Fairness Act within ten (10) days after the Settlement is filed with the Court and at least 90 days before the Final Approval Order is granted. *Id.* § 3.5.

The Claims Administrator will also be responsible for creating a Settlement Website, and shall maintain and update the website throughout the Claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement and any other materials agreed upon or requested by the Court. *Id.*, § 3.2(c). Settlement Class Members will be able to submit Claim Forms through the Settlement Website. *Id.*

The Claims Administrator will also create and maintain a toll-free help line with a live operator to provide Settlement Class Members with additional information about the settlement. The Claims Administrator also will provide copies of the Long Notice and paper Claim Form, as well as the Settlement Agreement, upon request. *Id.*, § 3.2(f).

### 2. Claims, Objections, and Requests for Exclusion

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their Claim, and decide whether they would like to opt-out or object. *Id.*, §§4-5.

Settlement Class Members will have 90 days from the Notice Commencement Date to submit their Claim Form to the Claims Administrator, either by mail or online. *Id.*, § 1.7. The Claims Administrator has authority to assess the validity of Claims, and upon receipt of an incomplete or unsigned Claim Form, is required to request additional information and/or documentation and give the Settlement Class Member 30-days to cure the defect before rejecting the Claim. *Id.*, § 2.2. Claims will be paid within 30 days after the Effective Date. *Id.*, § 9.2.

Any Settlement Class Member who wishes to opt out of the settlement will have until 60 days after the Notice Commencement Date to provide written notice that they would like to be excluded from the Settlement Class. *Id.*, §1.23. Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. *Id.*

Similarly, Settlement Class Members who wish to object to the terms of the Settlement Agreement must do so in writing and send their objection to the Claims Administrator on or before 60 days from the Notice Commencement Date. *Id.*, § 1.22. The written objection must include: (i) the objector's full name and address; (ii) the case name and docket number; (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (*e.g.*, copy of the objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied

11

by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. *Id.*, § 5.1. To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than the Objection Date, to Proposed Settlement Class Counsel and counsel for Defendants. *Id.* The objector or his or her counsel may also file objections with the Court through the Court's ECF system, with service on Proposed Settlement Class Counsel and Defendants' counsel made through the ECF system. *Id.*

### D. Attorneys' Fees, Costs, and Service Awards

The Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service awards to Plaintiffs until after the substantive terms of the settlement had been agreed upon, other than that reasonable attorneys' fees, costs, expenses, and a service award to Plaintiffs as may be agreed to by Defendants and Proposed Settlement Class Counsel and as ordered by the Court, or, in the event of no agreement, as ordered by the Court, from the Settlement Fund. *Id.*, § 7.1. Defendants have agreed not to challenge a petition for an award of attorneys' fees at or below 33.33% of the Settlement Fund, or approximately $326,568.00, and litigation expenses of $10,000.00 or less. *Id.*, § 7.2. The Settlement Agreement also provides for a reasonable service award to each Plaintiff in the amount of $3,000. *Id.*, § 7.3. The service award is meant to compensate Plaintiffs for their efforts, which include maintaining contact with counsel, assisting in the investigation of the case, reviewing pleadings, remaining available for consultation throughout the settlement negotiations, answering counsel's many questions, and reviewing the

Settlement Agreement. Counsel Decl., ¶ 14. Plaintiffs will seek the Court's approval of the requested attorneys' fees, costs and service awards prior to the Final Fairness Hearing by way of a separate motion. *Id.*, ¶ 75.

## IV.   <u>ARGUMENT</u>

"Federal Rule of Civil Procedure 23(e) requires Court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). When parties seek preliminary approval of a class action settlement agreement under Rule 23(e), the District Court must: (1) determine whether it will likely be able to certify the putative class for purposes of judgment on the proposed settlement; (2) determine whether the proposed settlement is within the range of possible approval with regard to the criteria set forth in Rule 23(e); and (3) approve the proposed notice plan and direct Plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. *In re TikTok, Inc. Consumer Privacy Litig.*, MDL No. 3948, 2021 WL 4478403, at *5 (N.D. Ill. Sept. 30, 2021).

Here, the proposed Settlement Class and California Settlement Subclass meet the standards for certification; the proposed settlement is an outstanding result for Settlement Class Members and well within the range of possible approval; and the notice program proposed by the Parties meets all requirements of due process and Rule 23. Thus, this Court should grant preliminary approval.

### A.  The Settlement Class and California Subclass Should be Certified for Settlement Purposes.

At the preliminary approval stage, the Court must determine that it "will likely be able" to certify the putative class or classes for purposes of judgment on the proposed settlement. Fed. R.

Civ. P. 23(e)(1)(B)(ii); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *3 (N.D. Ill. July 26, 2011).

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that has settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened; as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a national basis—including the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25,

14

2019). *See also, e.g., In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). Both the Settlement Class and the California Settlement Subclass should be similarly certified. *See Herrera v. Wells Fargo Bank, N.A.*, No. SACV 18-332JVS, 2021 WL 3932257, at *12 (C.D. Cal. Jun. 8, 2021) (granting preliminary approval of settlement and finding equitable treatment of class members even where statutory subclass members would receive greater relief than non-statutory subclass members).

Here, the Settlement Class and California Subclass meet the requirements of Rule 23 and warrant certification.

### 1. The Settlement Class Members and California Settlement Subclass Members are so numerous that joinder is impracticable.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See Savanna Group, Inc. v. Trynex, Inc.,* 2013 WL 66181, *4 (N.D. Ill. 2013). Here, there are approximately 81,000 class members. Joinder, therefore, is clearly impracticable, and the class thus easily satisfies Rule 23's numerosity requirement.

### 2. Questions of Law and Fact are Common to the Members of the Settlement Class and Settlement Subclass.

Commonality is satisfied where common questions are capable of generating "common answers apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

Here, commonality is satisfied because the circumstances of each particular Settlement Class Member retain a common core of factual or legal issues with the rest of the Settlement Class,

regardless of whether the individual is a member of the Settlement Class or both the Settlement Class and the California Settlement Subclass. Plaintiffs' claims center on whether Defendant failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members. For example, issues common to all Settlement Class and Settlement Subclass Members include:

- Whether Defendant owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding Plaintiffs' and Settlement Class Members' PII;

- Whether Defendant knew or should have known that it allegedly did not employ reasonable measures to keep the PII of Plaintiffs' and Settlement Class Members' secure; and

- Whether Defendant violated the law by allegedly failing to promptly notify Plaintiffs and Settlement Class Members that their PII had been potentially compromised.

These common questions, and others alleged by Plaintiffs in their Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis because they all tie back to the same common nucleus of operative facts—the Data Incident and Defendants' data protection measures. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement"). Thus, Plaintiffs have met the commonality requirement of Rule 23.

### 3. Plaintiffs' Claims are Typical of the Claims of the Members of the Settlement Class They Represent.

"Rule 23(a) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transportation Sys., Inc.*, 2016 WL 7426134, at *2 (N.D. Ill. 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims

are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006)). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, the claims of Plaintiffs and all Settlement Class Members arise out of the same course of conduct—that Defendant collected and allegedly failed to adequately protect the Settlement Class Members' PII—and assert the same theories of liability. As a result, the typicality requirement is satisfied.

### 4. The Adequacy Requirement is Satisfied.

The test for evaluating adequacy of representation under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok, Inc., Consumer Privacy* Litigation, 2021 WL 4478403, at *7 (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 598 (7th Cir. 1993). Here, the Settlement Class Representatives and Settlement Class Counsel meet the test of adequacy.

First, there is no conflict between Plaintiffs and the Settlement Class Members. Plaintiffs were allegedly harmed in the same way as all Settlement Class Members when Defendants allegedly failed to adequately secure their PII. Plaintiffs and all Settlement Class and California Subclass Members seek relief for injuries arising out of the same Data Incident. In light of this common event and injury, the named Plaintiffs have every incentive to vigorously pursue the putative Class claims and no conflict exists.

17

Further, Settlement Class Counsel are qualified to represent the Settlement Class. They have extensive experience in data privacy and consumer class actions. *See* Counsel Decl., ¶¶ 16-20. The results obtained by this settlement confirm Settlement Class Counsel's adequacy. Thus, the requirements of Rule 23(a) are satisfied.

### 5. Rule 23(b) is Satisfied

Rule 23(b)(3) allows for certification only where (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### a. Common Questions of Fact and Law Predominate

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Catholic Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108, 118 (2d Cir.2013)) (internal quotation marks omitted). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Id.* at 620.

In this case, the key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and the Settlement Class, and whether Defendant breached that duty. The common questions that arise from Defendant's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized

18

issues. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case because "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Thus, this case meets the requirement of predominance.

b. *A Class Action is the Superior Method for Resolving These Claims*

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

19

The resolution of tens of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantees an increase in judicial efficiency and conservation of resources over the alternative of individually litigating millions of individual data breach cases arising out of the *same* Data Incident.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Settlement Class should be certified for settlement purposes.

### B. The Settlement Should be Approved as Fair, Reasonable, and Adequate.

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of complex disputes often involved in class action minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes on already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) (citing *In re AT&T*, 270 F.R.D. at 346). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id.* "If the court preliminarily approves the settlement, the class members are notified." *Id.*

Rule 23 – and particularly the portions thereof dealing with settlement – was amended in December 2018. The first step in the amended process is a preliminary fairness determination: the new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Rule 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

A.  The class representative and class counsel have adequately represented the class;

B.  The proposal was negotiated at arm's length;

C.  The relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D.  The proposal treats Class Members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Fed. R. Civ. P. 23(e)(1)(B).

The second step in the process, occurring only after notice has issued to the class, is a final fairness hearing. Fed. R. Civ. P. 23(e)(2); *see also Manual For Complex Litigation*, § 21.633-34; *In re Northfield Labs.*, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members."). As explained below, consideration of the relevant factors supports preliminarily approving the Settlement Agreement and issuing notice.

### 1. The Settlement Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class.

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *see also Armstrong*, 616 F.2d at 313. This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. *See* Counsel Decl., ¶¶2-7. At the outset of their investigation, Settlement Class Counsel conducted extensive research regarding Plaintiffs' claims, Defendant, and the Data Incident. *Id.*, ¶ 3. Class Counsel then requested, and Defendant produced, informal discovery necessary to engage in informed discussions about class resolution. *Id.* The parties then spent nearly three months negotiating the material terms of a class settlement, and then an additional two months finalizing the full settlement agreement. *Id.*, ¶ 5.

Prior to engaging in settlement discussions, the Parties briefed Defendant's Motion to Dismiss. ECF Nos. 32, 33, 43, 45. As such, and considering Settlement Class Counsel's extensive experience in data breach litigation (*see, e.g.,* Counsel Decl., ¶¶ 16-20), the Parties were able to enter into settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims. *See In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (granting preliminary approval to privacy class settlement where the parties exchanged discovery over a six-month period and then mediated the case to reach a settlement).

In addition, the adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Here, as discussed *supra*, the Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. They thus have every incentive to vigorously pursue the claims of the Settlement Class, as they have done to date by remaining actively involved in this matter since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. Counsel Decl., ¶ 14. Further, Plaintiffs retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018).

In a case where experienced counsel represent the class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 792; *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own judgment as to optimal

settlement terms for the judgment of the litigants and their counsel."). Here, Plaintiffs' counsel believe that the Parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the Settlement Class. Counsel Decl., ¶ 9. Plaintiffs' Counsel also believes that the benefits of the Parties' settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.* ¶ 10.

### 2. The Settlement Was Negotiated at Arm's-Length by Vigorous Advocates, and There Has been no Fraud or Collusion.

Here, the Settlement Agreement resulted from good-faith, arms'-length settlement negotiations over many months, resulting in the Settlement Agreement before the Court Counsel Decl., ¶ 7. Accordingly, it is clear that that the Parties negotiated the Settlement Agreement at arm's length and absent any fraud or collusion. This factor thus weighs in favor of preliminary approval.

### 3. The Settlement Provides Substantial Relief for the Settlement Class.

The Settlement Agreement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees. "The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T*, 270 F.R.D. at 347. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions*, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a

24

person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . " *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

> a. *The Costs, Risks, and Delay of Trial and Appeal Favor Approval of the Settlement.*

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendants will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive Defendant's fully briefed motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and Settlement Class Members can have a chance at relief.

Plaintiffs dispute the defenses Defendants are likely to assert, but it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright v. Nationstar Mortg., LLC*, 2016 WL 4505169, at *10 (N.D. Ill. 2016).

### b.  The Method of Providing Relief is Effective

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

### c.  The Proposed Award of Attorneys' Fees is Fair and Reasonable.

"[T]he terms of any proposed award of attorneys' fees, including timing of payment," are also factors in considering whether the relief is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiffs' counsel will seek an award of attorneys' fees of at or below 33.33% of the Settlement Fund, or approximately $326,568.00, and litigation expenses of $10,000 or less.[2] This percentage fee requested falls well within the range of other approved class settlements, including privacy class settlements. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. at 501 (N.D. Ill. 2015) (awarding 36%

---

[2] Plaintiffs will file a complete petition for fees, costs, and service awards by separate filing prior to the deadline for Settlement Class Members to object to or exclude themselves from the Settlement Agreement.

of net settlement fund in class settlement); *Martin v. JTH Tax, Inc.* No. 13-cv-6923, ECF No. 85 (N.D. Ill. Sept. 16, 2015) (awarding fees of 38% of net settlement fund in class settlement); *Kusinski v. Macneil Auto. Prod. Ltd.*, No. 17-CV-3618, 2018 WL 3814303, at *1 (N.D. Ill. Aug. 9, 2018) ("The Court authorizes 1/3 of the Gross Settlement Fund") *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (same); *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *Karpilovksy v. All Web Leads, Inc.*, 17-cv-01307, ECF No. 173 (N.D. Ill. Aug. 8, 2019) (approving fees of 35% of the settlement fund). Plaintiffs' counsel achieved an excellent result for the Settlement Class after undertaking substantial risk in bringing this action on a pure contingency basis, and they should be fairly compensated.

Prior to final approval, Plaintiffs' counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Settlement Class Notice. At this stage of the settlement, the requested fees and costs are clearly within the range of possible approval and support preliminary approval of the Settlement Agreement.

> *d.  There are no Additional Agreements Required to be Identified under Rule 23(e)(3).*

As no additional agreements requiring identification exist, this factor does not weigh either in favor of or against preliminary approval.

### 4. The Settlement Agreement Treats Settlement Class Members Equitably with Each Other.

Here, the proposed Settlement Agreement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members will be eligible to make a Claim for reimbursement for ordinary and extraordinary loss. *See* SA, §2(A)-(B). Likewise, all Settlement Class Members will be eligible to make a Claim for cash payment. *See id.*, §§ 2(C) and 3(D). Settlement Class Counsel further state that the enlarged cash payment to the California Settlement Subclass is warranted because California Settlement Subclass Members have additional and valuable California state claims.

Importantly, direct notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the settlement. And while Plaintiffs will be seeking a $3,000 service award for their services on behalf of the Settlement Class, this award is significantly less than the amount that any given Settlement Class Member can claim in reimbursements and thus does not create any improper motivation to settle or give rise to undue inequities across the Settlement Class.

Accordingly, this factor also weighs in favor preliminary approval.

### C. The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirements.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The notice provisions of Rule 23 were amended because means of

communication have evolved, and permitting notice by electronic means, including e-mails, digital media, and social media, may provide the best practicable notice under the circumstances. Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C at 17-18.23 (Aug. 2018). Specifically, the amended language expressly provides that notice can be made by one or a combination of means, including "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The Committee Note to Rule 23 advises: "Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the 'traditional' methods are best may disregard contemporary communication realities." Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C at 19 (Aug. 2018). Consistent with that directive, counsel for the Parties and the Claims Administrator have carefully considered cost, customer preference, and effectiveness in determining the best practicable means of communicating the settlement benefits and rights of exclusion (among other matters) to the Settlement Class.

Here, notice will be provided directly to individual Settlement Class Members via the contact information they provided to Defendants when interacting with them. S.A., § 3.2(a), (d). Specifically, the Claims Administrator will first send Notice to the Settlement Class via email to the email addresses in Defendants' possession. *Id.* Where the Short Notice is undeliverable via email or where an email address is not available, the Short Notice will be sent via U.S. Mail to the address in Defendants' possession. *Id.* Prior to mailing, addresses will be run through the National Change of Address database and updated. *Id.* Short Notices returned with forwarding addresses will be forwarded, and those returned with no forwarding address will be resent to any valid address found after performing a skip trace. *Id.* The Claims Administrator will also create and

maintain a Settlement Website where Settlement Class Members can view relevant documents, submit their Claim Forms, or get answers to frequently asked questions. *Id.*, § 3.2(c). In addition to the direct Notice and Settlement Website, the Claims Administrator will also maintain a dedicated toll-free, live operator help line, to provide Settlement Class Members with additional information they may need. *Id.*, § 3.2(f).

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). This information is included both the Long Notice and Short Notice in language that is easy to understand. *See* SA, Exs. B, D.

Because the class notice and notice plan set forth in the Settlement Agreement satisfy the requirements of due process and Federal Rule of Civil Procedure 23 and provide the best notice practicable under the circumstances, the Court should direct the Parties and the Claims Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and its order granting preliminary approval.

### V.   <u>CONCLUSION</u>

Plaintiffs respectfully request that this Court (1) conditionally approve the Parties' Settlement Agreement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiffs as the Class Representatives, (3) appoint Plaintiffs' counsel as Class Counsel, (4) provisionally certify the Settlement Class under Federal Rule of Civil

Procedure 23(b)(3) and (e) for settlement purposes only, (5) approve the Parties' proposed notice program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23, (6) set deadlines for Settlement Class Members to submit claims for compensation, objections and requests for exclusion, and (7) set a date for a final approval hearing.

Dated:  July 28, 2023                    Respectfully submitted,


/s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Joseph M. Lyon (OH Bar #76050)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 721-1178
jlyon@thelyonfirm.com

Raina C. Borrelli
raina@turkestrauss.com
**TURKE & STRAUS LLP**
613 Williamson St., Ste. 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

*Interim Co-Lead Class Counsel*

Bryan L. Bleichner (*pro hac vice* forthcoming)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com

31

Terence R. Coates (*pro hac vice* forthcoming)
Jonathan T. Deters (*pro hac vice* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court St., Ste. 530
Cincinnati, Ohio 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com
jdeters@msdlegal.com